GEORGE W. RINKEL, Appellant, v. GEORGE W. LUBKE et al., Executors et al.

Division Two, December 10, 1912.

1. **EVIDENCE: Sanity of Grantor of Land: Record of Former Trial.** The record of a will contest in which the verdict was that the testator lacked testamentary capacity in November, 1892, is not evidence that the same man was of unsound mind in August, 1890.

2. **APPEAL: Petition: Evidence.** In a suit to declare what purports to be a warranty deed a mortgage, it is alleged in plaintiff's petition that the grantee falsely and fraudulently represented to the grantor that there were two deeds of trust on the property and the deed in suit was intended to secure that indebtedness. *Held,* that, since there was no direct evidence at all and no circumstantial evidence of consequence to support such allegation, and since the appellant practically ignored it in his briefs upon appeal, the Supreme Court also may well ignore it.

3. **DEED: Absolute on Face: Mortgage: Evidence.** To destroy the presumption that a deed absolute upon its face is absolute in fact, the evidence must be clear and convincing and exclude every reasonable doubt.

4. ———: ———: ———: ———: **Holding.** *Held,* in an action to have a deed purporting to be absolute declared a mortgage, and to recover the proceeds of real estate, that the evidence is insufficient to support the action.

5. **APPEAL: Equity: Rulings on Evidence.** The Supreme Court does not usually reverse judgments in equity because of erroneous rulings in admitting and excluding evidence, but reaches its judgment on the competent evidence, without regard to the trial court's rulings.

Appeal from St. Louis City Circuit Court.—*Hon. Matt G. Reynolds,* Judge.

AFFIRMED.

*W. B. Thompson* and *Ford W. Thompson* for appellant.

(1) The court erred in excluding the memorandum in the private book of accounts of F. W. Henze, dated August 1, 1896. 2 Wigmore on Evidence, Secs. 1455, 1458, 1464; Greenleaf on Evidence (16 Ed.), Secs. 150-152. (2) The court committed error in excluding the testimony of L. F. Ottofy with reference to conversations with F. W. Henze. Hamil v. England, 50 Mo. App. 346. Counsel for plaintiff stated to the court what he proposed to prove by the attorney, and the record shows that the evidence attempted to be adduced from the attorney was competent and material. Hickman v. Green, 123 Mo. 179. The communication made by Henze to Ottofy subsequent to the termination of the contest of the will, and when preparations were being made to take an appeal, was not privileged. Gerhardt v. Tucker, 187 Mo. 46; Rosseau v. Bleau, 131 N. Y. 177; Collins v. Robinson, 72 Hun. 495; Koeber v. Somers, 108 Wis. 497; Railroad v. Brookings, 51 S. W. 53; 10 Ency. Evidence, 255; State v. Faulkner, 175 Mo. 597; State v. Lehman, 175 Mo. 625. (3) The court erred in excluding the record of the contest of the will of F. W. Hamburger, Sr.: (a) Because the parties in the pending suit are either the same or in privity with the parties to the former suit. (b) The judgment entered in said suit was competent evidence tending to prove the averment of the petition, that Hamburger was and had been for a long time incapable of managing his affairs and mentally incapacitated for the transaction of any business; that Henze had an influence over Hamburger, Sr., and also tended to show Henze exerted said influence for his own bene-

fit.  Phillips v. Jamison, 51 Mich. 153.  Judgments are admissible in evidence when the same subject-matter again comes in controversy between the same parties.

*George W. Lubke* and *George W. Lubke, Jr.,* for respondents.

(1)  The entry in Henze's private cash book was not competent as a book entry in the absence of a showing how the book was kept.  Wigmore on Evidence, Secs. 1523 to 1528.  Nor was it competent as an admission in the absence of a showing that it was seen by some person other than Henze in his lifetime.  Nelson v. Boland, 37 Mo. 433; Robinson v. Cushman, 2 Denio. (N. Y.) 149; United Press v. Abell Co., 80 N. Y. Supp. 149; Brewing Co. v. Pearson, 74 N. Y. Supp. 187.  (2) The testimony proposed to be given by L. F. Ottofy, attorney for Henze, as to conversations with him during the pendency of the suit to contest F. W. Hamburger, Jr.'s, will was rightfully excluded by the court because it was a privileged communication.  It was immaterial that some one other than Henze paid Ottofy.  According to the petition and record of that case Ottofy was Henze's attorney.  Cross v. Riggins, 50 Mo. 335; Hull v. Lyon, 27 Mo. 570; Johnson v. Sullivan, 23 Mo. 474; Gray v. Fox, 43 Mo. 570; Aultman v. Daggs, 50 Mo. App. 280; Fry v. Estes, 52 Mo. App. 1; Farrell v. Insurance Co., 66 Mo. App. 153; Pinson v. Campbell, 124 Mo. App. 260; Smoot v. Judd, 161 Mo. 689; R. S. 1899, Sec. 6362.   (3)  The parts of the record in the suit to contest the will of F. W. Hamburger, executed Nov. 2, 1892, more than two years after the execution of the deed in question, were not competent for any purpose in this case. They could not prove Hamburger's mental condition in August, 1890, two years before the will was executed, and could not prove any fraud practiced by Henze on Hamburger in the execution of the deed.  (4)  The purport

of all the evidence excluded by the court below is preserved by the bill of exceptions. This evidence will, therefore, be considered by this court in the determination of this cause and admitted or rejected. If after considering and ruling on the excluded evidence this court reaches the conclusion that the judgment of the court below was for the right party that judgment will not be disturbed, but affirmed. Walther v. Null, 233 Mo. 104; Lindhorst v. Asylum, 231 Mo. 679; McKee v. Downing, 224 Mo. 115; Jones v. Thomas, 218 Mo. 508; Hanson v. Neal, 215 Mo. 271; Gibbs v. Haughowout, 207 Mo. 384. (5) Considering all the evidence in the case, that excluded as well as that admitted, plaintiff is not entitled to recover. In order that a deed absolute on its face may be reformed and declared to be a mortgage, there must be proof so clear and unequivocal that a debt due from the grantor to the grantee existed and that it was the intention of the parties that the deed should be only a security, that no reasonable doubt is left in the mind of the chancellor as to the agreement of the parties. If no debt is proved to exist, there can be no mortgage. Worley v. Dryden, 57 Mo. 266; Bobb v. Wolff, 148 Mo. 335; Jones v. Rush, 156 Mo. 364; Gerhardt v. Tucker, 187 Mo. 46; Bailey v. Trust Co., 188 Mo. 483; Jones v. Hubbard, 193 Mo. 147; Duell v. Leslie, 207 Mo. 658; Donovan v. Boeck, 217 Mo. 70; Whelan v. Tobener, 71 Mo. App. 361.

BLAIR, C.—As the residuary legatee of Frederick W. Hamburger, Jr., who in turn was the sole heir of Frederick W. Hamburger, Sr., appellant instituted this suit in the circuit court of the city of St. Louis to recover the proceeds of certain realty in St. Louis county conveyed by Hamburger, Sr., to Frederick W. Henze by a deed absolute on its face but alleged to have been in fact a mortgage. Three of the respondents are the executors and the others the devisees of Henze. The

deed to Henze recited a consideration of $5000 ($4000 cash and a balance of $1000 due on two deeds of trust), and the property it conveyed consisted of sixty small lots, each about twenty-five by one hundred and twenty feet, the tract being known as the Oak Hill property, situated on what is called the St. Charles Rock Road in St. Louis county. The judgment below was for defendants.

The deed assailed was dated August 11, 1890, and the petition alleges that while it is absolute on its face it was executed by Hamburger solely for the purpose of vesting in Henze the legal title to the Oak Hill property to secure the payment of certain indebtedness of Hamburger, Sr., to Henze, and was for a time recognized and acknowledged by Henze to be simply a mortgage. It is further alleged that at the time the deed was executed Hamburger, Sr., was mentally incapable of transacting business and that Henze induced him to execute the deed by falsely and fraudulently representing to him that there were then on the property two deeds of trust securing $1000, and that the deed executed was intended to secure that indebtedness. It is further alleged that there were, in fact, no deeds of trust outstanding against the property. Other allegations are that Henze did not assert title in himself until after the death of both the Hamburgers, father and son, and then he did so by having the deed to him recorded a second time, January 21, 1897; that plaintiff had no knowledge of the facts set forth until after Henze's death in 1905; that some of the lots were sold by Henze in his lifetime and the others by those defendants who are legatees of Henze, and prays an accounting and judgment against the executors for the amount realized by Henze from the lots he sold, less amounts found due him, and against Henze's legatees for the sums realized by them.

Separate answers were filed, one by the executors and one by the devisees under Henze's will. Each ad-

mitted Henze's death, the probate of his will and the issuance of letters testamentary and denied all other allegations, and, in addition, contained pleas of the five and ten-year Statutes of Limitation.

The evidence showed that for some years prior to 1890 Frederick W. Hamburger, Sr., had owned the Oak .Hill propery and another tract known as the Darby Hill property, making his home on the latter. In 1888 he platted the first named parcel. Hamburger, Sr., and Henze were brothers-in-law and as early as 1878 Henze had loaned Hamburger money, taking a deed of trust on the Oak Hill property. August 11, 1890, Hamburger, Sr., and wife executed the deed now assailed. It was absolute on its face. Frederick W. Hamburger, Jr., also signed this deed as a witness to his father's signature. November 29, 1892, Hamburger, Sr., died leaving a will (which was subsequently set aside), and the executor thereof filed an inventory of the estate which included none of the Oak Hill property except one lot. Subsequently the will was set aside and Hamburger, Jr., sole heir of Hamburger, Sr., was appointed administrator *d. b. n.* and adopted the inventory filed by the quondam executor. In the meantime Henze had been selling lots in the Oak Hill tract, at least one such sale having been made prior to Hamburger, Sr.'s, death. The evidence is conflicting on the question whether Henze or Hamburger, Sr., exercised dominion over the Oak Hill property in 1891 and 1892 but there is practically no dispute as to Henze's possession after 1893, and it is admitted he paid the taxes falling due after the date of the deed to him.

April 30, 1896, Frederick W. Hamburger, Jr., died, leaving a will whereby he devised to appellant all his property except legacies of insignificant amount to certain relatives, one of these legatees being Henze's wife. January 21, 1897, the deed of August 11, 1890, was recorded anew, the first record of it not conform-

ing to the deed with respect to the description of one of the lots. Appraisement and inventory of the estate of Hamburger, Jr., were filed May 7, 1896, and included only the Darby Hill property, disclosing that it was subject to three deeds of trust aggregating $4750, the last two being for $1000 and $750 respectively, and being made to secure loans from appellant to Hamburger, Jr. April 10, 1897, this property was sold under the first deed of trust ($3000) and was bought in and subsequently sold by appellant's sister. A short time thereafter the heirs of Hamburger, Jr., including Henze's wife, instituted proceedings to have his will declared invalid. Henze was joined with his wife as a party. Judgment went against the contestants. March 21, 1905, Henze died leaving the will referred to above. Before his death he had sold most of the lots but, except as to a few, it does not appear when, to whom or for what prices these sales were made. The remaining lots were devised to certain of the respondents herein and they had sold these lots prior to the commencement of this suit, March 21, 1907. In 1890 the Oak Hill property had been platted but the streets had not been made and the witnesses referred to it as "acre property." It consisted of about seven acres and the testimony as to its value in 1890 ranged from $350 an acre to five dollars a front foot.

To show Hamburger, Sr.'s, incapacity to execute the deed of August 11, 1890, appellant offered the petition, instructions, verdict and judgment in the contest proceedings in which Hamburger, Sr.'s, will was set aside, but the court excluded this.

The evidence relied on to show that the deed mentioned was really a mortgage consisted mainly of statements of Henze.

Mrs. Gaines, sister-in-law of Henze, said that before the suit to set aside Hamburger, Jr's., will was instituted Henze said to one of the attorneys that he had no interest in the matter and wanted his wife's

share to go to witness, and said to her that if the will of Frederick W. Hamburger, Jr., was not set aside, Rinkel "would get it all." Whether this occurred prior to the sale of the Darby Hill property under the deed of trust does not appear.

James M. Grenolds testified that within a year before the senior Hamburger died he heard Henze tell Hamburger, Jr., that he, Henze, held a mortgage on the Salzman avenue place and if the son behaved himself the property would be all his. Witness lived in one of Henze's places from 1888 to 1893 and then moved away.

Mrs. Bernardine Hamburger, whose husband is a nephew of Frederick W. Hamburger, Sr., testified that after the death of Frederick W. Hamburger, Jr., Henze said to her that in case he and Mrs. Henze died there "was plenty for both sides" and that he would "look out that Rinkel and Thompson won't get hold of this." She said he was talking of the land the railroad company bought.

Appellant testified the first information he had that the deed of August 11, 1890, was in a fact a mortgage was received from the witness Mrs. Gaines just before this suit was begun; that at the time suit was begun to set aside the will of Frederick W. Hamburger, Jr., all real estate inherited by the latter from his father had been sold under deed of trust and there was, apparently, no property belonging to the estate; that he found an unreleased deed of trust to Henze against the Darby Hill property; that the note secured had previously been paid and Henze, when applied to in 1903, executed without objection a deed of release to Mollie H. Rinkel and William B. Thompson, who seem then to have owned the Darby Hill tract.

Appellant also offered in evidence certain memoranda, offering in that connection testimony that the handwriting was that of Henze and the book was one

kept by him and found in his safe after his death. The part offered was as follows:

Henze's Old Rock Bakery Co.
417 & 419 Lucas Avenue,
Ladies' and Gents' Lunch Room.

1896.                    St. Louis,              189—
Augt.        Given to be newly recorded to F. Koster, Notary
Returned     Public, one deed of trust made in favor of
Jan. 15-96.  F. W. Henze by F. W. Hamburger and wife for
Nothing done land next to Salzman laid out in lots.
to this                          Letter to Surkamp
deed.                                  Oct. 24, 1903.
   Page 35    Rect. to J. C. Ryan, May 21, 1904, mining road
Cash book in hand- on the west side Salzman side—$65.00 per year
   writing of F. W. com. May 1, 1904, paid to May 23, 1905.
      Henze.  Plaintiff's Exhibit No. 1 to deposition of Jos.
              W. Smith, taken before me May 26, 1908.
              Sophie C. Leussler, Notary Public.

Appellant then called an attorney who represented the contestants in the suit to set aside the will of the junior Hamburger and offered to prove by him that Henze, though a party, did not employ or pay him and then offered to prove by the attorney that after judgment for the contestee in that case, and while the contestants were preparing to take an appeal, he had a conversation with Henze in which Henze stated he knew there was no property which could be affected by the will except the Oak Hill property; that it stood in his, Henze's, name and the intention of the contestants was to prevent appellant from getting it; that all other property owned by Frederick W. Hamburger, Jr., had been sold under deed of trust. This the court excluded.

The same witness testified he had examined the records of St. Louis county and there were no unreleased deeds of trust against the Oak Hill property August 11, 1890.

For defendants Ernest Gleditzsch testified that Hamburger, Sr., in 1889 attempted to sell him one of the Oak Hill lots, but he did not purchase; that afterwards he concluded to buy and in 1891 saw Hamburger, Sr., and was told by him he had sold the place to

Henze and to see Henze about it. Hamburger said he sold the place in order to clear the Darby Hill property where he lived, clear up his debts, and have the Darby Hill tract unincumbered.

It also clearly appeared from the testimony of Frank C. Schmidt that the reason the deed of August 11, 1890, was recorded anew in 1897, was that in copying it into the record the first time it was recorded, there was a partial omission of the description of one of these lots; that this lot was sold and the purchaser complained to Henze that the title was bad; that the latter promised to look into it and, later, in 1896 or 1897, told the grantee he had "a record of the deed made," had "straightened the thing out." Later the lot owner secured a certificate showing perfect title.

Two deeds of trust on the Darby Hill property showing releases dated September 11, 1890, were put in evidence. One was for $500 and the abstract does not give the amount secured by the other.

I.  The only evidence offered which it is suggested tended to show that in August, 1890, Frederick W. Hamburger, Sr., was mentally incapable, was the record in the contest of his will in which the verdict and judgment could hardly be said to mean more than that in November, 1892, he lacked testamentary capacity. There was no offer to prove otherwise whether his mind was sound in August, 1890, and no offer to show that his condition in November, 1892, was the same as in August, 1890. The issue in the case mentioned was the mental capacity of Hamburger November 2, 1892, and, though the judgment be assumed to be admissible, it could not alone have justified the trial court in finding he was insane nearly two and a half years theretofore and, consequently, could not justify this court in making such a finding now.

The allegation that Hamburger, Sr., was mentally incapable to execute the deed of 1890 must be ignored

in the further consideration of the case. In fact, appellant's counsel seem to lead the way in respect to this, there being no contention in this court that the deed was invalid for the reason mentioned.

II.  There is no direct evidence of any kind and no circumstantial evidence of any consequence that Henze made any representations to Hamburger, Sr., false or otherwise concerning the existence of deeds of trust on either the Oak Hill or Darby Hill property. The consideration clause in the deed is not set out literally in the abstract and the only statement relating to that feature is added in pen and ink and is as follows: "The consideration in this deed was the payment of $4000, the grantee agreeing to pay the balance of $1000 on two deeds of trust on said property" and is the language of the abstracter, not of the deed. It appears there were two deeds of trust on the Darby Hill property in August, 1890, and these were released of record September 11, 1890. There is no direct evidence that Hamburger paid Henze any money at any time. One of the deeds of trust mentioned secured $500 and the amount secured by the other is not shown by the record though it was before the trial court.

No effort was made to dispute the recital of the deed that part of the consideration was $4000 in cash. Appellant having practically ignored in his evidence, and in his briefs here, the allegations to the effect there was no consideration for the deed, we may with propriety, at this stage of the case, follow his example.

III.  The somewhat confusing allegations of the petition are clarified by appellant's course on the trial in practically confining his evidence to the allegation that the deed of August 11, 1890, was in fact a mortgage. This deed is absolute on its face and to destroy the presumption arising therefrom that it is and was, as it purports to be, absolute in fact, it is neces sary that the evidence adduced to prove it to be a

mortgage be clear and convincing and exclude every reasonable doubt. [Gerhardt v. Tucker, 187 Mo. l. c. 57; Jones v. Rush, 156 Mo. l. c. 376.]

There is no direct evidence of any agreement between Frederick W. Hamburger, Sr., and Frederick W. Henze except that contained in the deed. The language of the deed is merely that of an absolute conveyance. Frederick W. Hamburger, Jr., under whom appellant claims, witnessed his father's signature to the deed to Henze. The deed was recorded immediately and besides the actual knowledge Hamburger, Jr., would seem to have had of it, its record became constructive notice to him, after his father's death at least, of the fact the deed existed and showed the record title to be in Henze. Hamburger, Jr., after his father's death, obtained a judgment invalidating the will executed by his father November 2, 1892, and thereby became entitled to all property owned by his father at his death. As administrator *d. b. n.* he adopted an inventory of the estate to which he was sole heir, which inventory purported to list all realty of the estate but did not include the Oak Hill property, except the one lot insufficiently described in the first record of the deed of August 11, 1890. This inventory thus adopted took full cognizance of the deed mentioned and proceeded on the theory it was absolute in fact, and must have been based upon an examination of the record of the deed since it was partly predicated upon an error in that record. In view of these facts the testimony of Grenolds that Henze's statement to Hamburger, Jr., said to have been made within a year before Hamburger, Sr.'s, death, had reference to the Oak Hill property is not to be given much credit. Hamburger, Jr., did not so understand it. His subsequent adoption of the inventory which did not include the Oak Hill property (except the one lot), and his failure to take any note of the matter though he was paying up other debts of the estate, and his

closing up the administration in 1895 without listing the alleged debt or the property now claimed to have secured it, and his failure to take any steps of any kind in regard to the property, even as to the payment of taxes, are not consistent with the testimony Grenolds gave and the knowledge Hamburger, Jr., unquestionably had if Grenolds's testimony was in all respects true. Besides, during the life of Frederick W. Hamburger, Jr., Henze was selling these Oak Hill lots and the deeds thereto were being recorded in St. Louis county. Grenolds's testimony is explicable, in view of Hamburger, Jr.'s, subsequent conduct, only on the theory that he was mistaken as to the date of the conversation to which he testified or as to the property referred to in that conversation. He was testifying, fifteen or sixteen years after the event, to a casual conversation in which Henze was impressing upon Hamburger, Jr., the necessity of conducting himself properly. Grenolds's understanding of Henze's statement is wholly out of accord with young Hamburger's subsequent conduct, and the latter's interest in the property was such that his acts, and omission to act, in recognition of Henze's title effectually eliminate Grenolds's testimony from the case.

The testimony of Mrs. Gaines possesses no real probative force. She finally testified that: ''All he [Henze] said, as far as I remember was 'now, if you don't set aside that will, you get nothing and Mr. Rinkel will get it all.' '' She had attempted to say Henze was referring to the Oak Hill property, but both her direct testimony and cross-examination show that was but her own inference from the language quoted and that quoted was all Henze said. Further, the date of the conversation was not given except that it was *before* the suit to set aside the will of Frederick W. Hamburger, Jr. Whether it was before or after the sale of the Darby Hill property under the deeds of trust does not appear. If before such sale, what

was said was as referable to the Darby Hill property as any other. It does not appear, either, that Henze was advised of the insolvency of the estate of Frederick W. Hamburger, Jr., and if he was not, the statement made could as well have referred to the general estate on the assumption, usually tenable, that there was property of some kind to be distributed under the will.

Mrs. Bernardine Hamburger in her testimony does not identify the property referred to by Henze when he said "there was plenty from both sides, from my wife's side and from my side . . . and I am going to look out that Rinkel and Thompson won't get hold of this." She says he was "talking about the land the railroad had bought," but the record does not disclose what property that was or that Henze said anything else about it. In no event could this statement of Henze be taken to mean he had but a mortgage on the Oak Hill property. It really amounts to a statement that he and his wife had property which on his and her deaths would go to the kin. The probability of the wife dying under an impending operation gave origin to the conversation in which the statement is said by the witness to have been made.

The memorandum said to have been entered by Henze in his cash book apparently does not refer to the deed of August 11, 1890, since the memorandum itself indicates the deed therein referred to was not recorded anew but was returned to Henze and "nothing done with the deed." The entry as to the delivery of the deed for recording was made under date of "August, 1896." The marginal note of return of the deed by Koster to Henze is dated January 15, 1896. The conclusion that this last date is an error, probably induced by the presence of the date immediately above, and that the real date of the marginal entry was January 15, 1897, is the most reasonable. Adopting this conclusion the memorandum and note

could hardly have referred to the deed of August 11, 1890, since it was recorded anew January 21, 1897, and in view of Schmidt's testimony no reason appears why it should have been recalled and then redelivered for record, without memorandum thereof, prior to January 21, 1897.

In the circumstances, we think the entry from the cash book of no importance, without further evidence connecting it with the deed assailed, and consequently, find it unnecessary to determine the question of its admissibility.

A deed of trust dated May 15, 1879, on which Henze had noted a payment of interest and $115 on the principal and indorsed on the deed a statement, dated February 26, 1891, that Hamburger, Sr., owed him, Henze, nothing at that time, was put in evidence by appellant's counsel. There is another undated notation on the deed to the effect it was to be returned to Hamburger, Sr., "after rec. the new one." Without the aid of dates memoranda of this kind are of practically no value and the only one which is dated is squarely opposed to the idea of the existence of a mortgage or any debt due from Hamburger, Sr., to Henze in 1891.

The weight of the evidence is that Henze had possession of the property at least from and including 1893 forward. The evidence of Hamburger, Sr.'s, possession during 1891 and 1892 is unsatisfactory. For instance, one witness who testifies to that effect also testifies Hamburger sold Gleditzsch the lot he bought. This is clearly incorrect, Gleditzsch having purchased from Henze. Again some of the witnesses recall Hamburger, Sr.'s, possession from the fact of his filling up a pond and platting the property. The property was platted in 1888 and the pond filled before the platting was done. That Henze's grantees and tenants were in possession of part of the property in 1893, and that Hamburger, Jr., exercised no dominion over it

from that time on appears from the weight of the evidence. In addition the testimony of Gleditzsch, who went to Hamburger, Sr., in 1891 to purchase one of the lots and who was told by him that Henze owned the property and to see him, is clear and the date fixed by the fact of witness's removal to the city the preceding fall, 1890.

There is ample evidence that $5000 was an adequate price for the property. At any rate there is no such evidence that the price was inadequate as to convince us, in view of the trial court's finding, that this element now deserves to be considered as important.

The evidence for appellant, so far as reviewed, is weak and equivocal (Gerhardt v. Tucker, supra) and has, when considered as a whole, little or no probative force, many of the circumstances developed strongly tending to support the deed assailed and being inconsistent with the idea of its being other than its language indicates.

It is urged, however, that Mr. Ottofy's offered testimony was admissible and that it was error to exclude it. It is unusual to reverse judgments in equity on records like that before us because of erroneous rulings in admitting and excluding evidence, this court, on the hearing here, admitting and considering such evidence as it deems admissible, and excluding from consideration evidence improperly admitted and reaching its judgment on the competent evidence offered without regard to the trial court's rulings in that connection. [Hanson v. Neal, 215 Mo. 1. c. 271; Jones v. Thomas, 218 Mo. 1. c. 544.]

If the case be considered as if Mr. Ottofy's testimony in regard to his conversation with Henze had been admitted and the objections to his competency as a witness be waived for the moment, there arises, practically, the question whether his offered testimony would support a judgment for appellant. The conversation to which he was offered as a witness occurred

perhaps ten years before the trial, the exact time not being stated. The testimony belongs to that class of evidence which courts receive and act upon with much caution. Besides, the offer was not to show the deed of August, 1890, to be a mortgage, but, in effect, that the property belonged, outright to the estate of Frederick W. Hamburger. At least the one meaning is as applicable as the other. The statement attributed to Henze was therefore equivocal and taken at its face value and though accepted as true, does not amount to a direct admission that a mortgage existed. This last was the only issue actually tried.

On the whole record we cannot say there is no reasonable doubt in the case, and judgment of the trial court denying a decree for appellant on the evidence is affirmed. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court. All the judges concur.