Robert G. ARNETT and Margie J. Arnett, Appellants,

v.

Jerry VENTERS, Administrator of the Estate of Addie Lee Henry, Deceased, Leland C. Henry, Twyla Henry, LeRoy Henry, Luella Henry, Velma Rose Bloch, Max Bloch, Claudine Bailey, George F. Bailey, Paul H. Cox, Sherry L. Cox, August W. Morlock, Margaret J. Morlock, Darrell W. Schultz and Billie C. Schultz, Respondents.

No. WD 34161.

Missouri Court of Appeals, Western District.

May 22, 1984.

Tweedie Fisher, Jefferson City, for appellants.

John W. Inglish, California, for respondents Henry, Bloch and Bailey.

James F. Crews, Tipton, for respondents Cox and Schultz.

Before SOMERVILLE, P.J., and NUGENT and LOWENSTEIN, JJ.

PER CURIAM.

On November 30, 1976, plaintiffs, Robert G. Arnett and Margie J. Arnett, husband and wife (hereinafter plaintiffs Arnett), filed a petition in two counts wherein they sought damages for breach of an alleged covenant as to the quantity of land conveyed to them by warranty deed (Count I) and to quiet title to certain land in Moniteau County claimed by them under said warranty deed (Count II). Following trial and rendition of judgment, plaintiffs Arnett appealed.

The following prologue drawn from the record, prolix though it may be, is deemed essential in order to give some semblance of clarity to certain unusual facets of the case presented on appeal.

By warranty deed dated December 1, 1971, Addie Lee Henry (now deceased), Leland C. Henry, Twyla Henry, LeRoy Henry, Luella Henry, Velma Rose Bloch, Max Bloch, Claudine Bailey and George F. Bailey (hereinafter collectively referred to as defendants Henry), as grantors, conveyed certain real property in Sections Four (4) and Nine (9) of Township Forty-Four (44), Range Sixteen (16), Moniteau County, to the Arnetts. By way of a general description, the real property in question, farm land, lay east and west of Route E in Moniteau County. That portion which generated this litigation lay east of Route E and all references hereafter, unless otherwise indicated, are to that portion. Paul H. Cox and Sherry L. Cox, husband and wife (hereinafter defendants Cox), were owners of a tract of real property which abutted on the north the real property conveyed by defendants Henry to defendants Arnett. Darrell W. Schultz and Billie C. Schultz, husband and wife, and their predecessors in title, August W. Morlock and Margaret J. Morlock, husband and wife (hereinafter collectively referred to as defendants Schultz), were owners of a tract of real property which abutted on the east and south the real property conveyed by defendants Henry to plaintiffs Arnett.

The Henrys, Coxes, Morlocks and Schultzes were all named as defendants in the petition filed by plaintiffs Henry. Plaintiffs Arnett alleged in their petition, inter alia, that defendants Cox claimed possession of and title to approximately 11.67 acres referred to as a "slough" in the north part of the land conveyed to them by defendants Henry, and that defendants Schultz claimed possession of and title to approximately 2.89 acres in the southeast corner of the land conveyed to them by defendants Henry. The 11.67 acre and 2.89 acre tracts immediately heretofore referred to were the subject of the quiet title action asserted by plaintiffs Arnett in Count II of their petition.

The real property conveyed to plaintiffs Arnett by defendants Henry was described in the warranty deed by reference to quarter sections and quarter-quarter sections (with certain tracts excepted, none of which are involved in this litigation). More particularly, insofar as relevant to the cause at hand, part of the description referred to "thirty acres more or less being all that part of the Northeast quarter of the Southwest quarter [Section 4] lying south of the Moreau Creek", and the overall description concluded with "containing in all 129 acres more or less". The source of the legal description set forth in the warranty deed traced back to the early 1900's when the course of Moreau Creek ran considerably south of its present course. During the 1930's the channel of Moreau Creek gradually shifted to the north and at the time of the conveyance in question formed a natural boundary for the north line of the 11.67 acre tract in dispute. The south boundary of the land conveyed by defendants Henry to plaintiffs Arnett, according to the legal description set forth in the warranty deed, ran along a true east-west line. A fence of long standing starting on the east side of Route E, thence running at a slight angle to the north, from west to east, did not accurately follow the east-west line per the legal description in the warranty deed. This accounted for the 2.89 acre tract in

dispute in the southeast corner of the tract of real property described in the warranty deed from defendants Henry to plaintiffs Arnett, as well as a triangular 0.34 acre tract lying south of the east-west line per the legal description in the warranty deed and immediately adjacent to the east side of Route E. The triangular 0.34 acre tract was neither mentioned in the petition of plaintiffs Arnett, nor included within the legal description set forth in the warranty deed, nor covered by the judgment rendered by the trial court.

Defendants Henry filed an answer and counterclaim. In their answer to both counts, inter alia, they affirmatively alleged that prior to delivery of their warranty deed to plaintiffs Arnett the boundaries of the real property being sold and purchased were physically pointed out to the plaintiffs Arnett and, as pointed out, did not include the 11.67 acre tract claimed by defendants Cox or the 2.89 acre tract claimed by defendants Schultz. Moreover, they did not claim to own either of said tracts and they intended by their warranty deed to convey to plaintiffs Arnett only that land within the boundaries physically pointed out to the plaintiffs Arnett without regard to the number of acres contained therein, all of which was known to and understood by plaintiffs Arnett. Defendants Henry, regarding Count I, prayed to be "discharged with their costs", and regarding Count II, prayed the court to determine the "boundaries to the land in question and to declare the respective rights of the parties in and to the land described in Plaintiffs' Petition." By way of a counterclaim, defendants Henry, as apparently perceived by the trial court, sought reformation of the warranty deed in question, i.e. the legal description therein, on grounds of mutual mistake, or, in the alternative, for rescission.

Defendants Cox and defendants Schultz filed a joint answer and counterclaim. By way of counterclaim, defendants Cox alleged that they and their predecessors in title had been in actual, open, notorious, hostile, exclusive, and continuous possession of the controversial 11.67 acre tract "for a period of time sufficient to create title in them by adverse possession" and prayed for judgment accordingly. By way of counterclaim, defendants Schultz alleged that they and their predecessors in title had been in actual, open, notorious, hostile, exclusive, and continuous possession of the controversial 2.89 acre tract "for a period of time sufficient to create title in them by adverse possession" and prayed for judgment accordingly. Plaintiffs Arnett filed a reply denying the allegations contained in the joint counterclaim of defendants Cox and defendants Schultz.

In a pretrial order dated November 20, 1981, the trial court, on its own motion, severed Counts I and II of the petition of plaintiffs Arnett for purposes of trial, and "ordered" that Count II of the petition of plaintiffs Arnett be set for trial on January 13, 1982, *"together"* with any "equitable" claims asserted by defendants Henry in their counterclaim and the "counterclaims" of defendants Cox and defendants Schultz.

Following trial in accordance with the pretrial order dated November 20, 1981, the trial court, upon request, gave leave to the respective parties to submit "proposed" findings of fact and conclusions of law. On August 20, 1982, the trial court entered its "Findings of Fact and Conclusions of Law" and rendered judgment. Said judgment, referring to Count II of the petition of plaintiffs Arnett, ordered, adjudged and decreed that title to the real property in Moniteau County described in the warranty deed wherein defendants Henry were grantors and plaintiffs Arnett were grantees, *except as to the 11.67 acre tract and the 2.89 acre tract,* be vested in fee simple absolute in plaintiffs Arnett. Said judgment, referring to the counterclaim of defendants Cox, found in favor of said defendants, and ordered, adjudged and decreed that title to the 11.67 acre tract (described by an appropriate legal description) be vested in fee simple absolute in defendants Cox. Said judgment, referring to the counterclaim of defendants Schultz, found in favor of said defendants, and ordered, adjudged and decreed that title to the 2.89

acre tract (described by an appropriate legal description) be vested in fee simple absolute in defendants Schultz. Said judgment, regarding the counterclaim of defendants Henry, ordered, adjudged and decreed that plaintiffs Arnett "abandon any and all claims against any of the defendants [including defendants Henry] herein arising out of and being incidental to" the real estate ordered, adjudged and decreed in the judgment to be vested in defendants Cox and defendants Schultz. Finally, it should be noted, the judgment entered by the trial court was designated therein as "final for purposes of appeal in accordance with Rule 81.06."

Attention now focuses on certain key findings of fact and conclusions of law entered by the trial court material to the issues culminating in the judgment ultimately rendered. Suffice it to say, whether viewed singularly or collectively, competent and substantial evidence for their support permeates the entire record.

The agreed consideration for the warranty deed, to-wit, $31,000.00, was in gross by tract, not by acre. A licensed real estate broker represented defendants Henry, the grantors, in the sale which eventually culminated in execution and delivery of the warranty deed heretofore mentioned. Before the sale was finalized, plaintiffs Arnett visited the real property in question with the licensed real estate broker on two occasions. Each time, the real estate broker outlined the boundaries of the land lying east of Route E claimed by and being sold by defendants Henry by pointing out a semi-circular line of trees extending east, south and west around the 11.67 acre tract as being the north boundary line, and a fence running west to east at a slight angle to the north as being the south boundary line. Plaintiffs Arnett, by virtue of being on the land with the real estate broker and having the boundaries pointed to them, knew that defendants Henry did not claim to own the 11.67 acre tract and the 2.89 acre tract, that said tracts were not included in the sale of the real property being negotiated, and they did not intend to purchase same. Inclusion of the 11.67 acre tract and the 2.89 acre tract in the legal description contained in the warranty deed was the result of a mutual mistake on the part of both plaintiffs Arnett and defendants Henry. The legal description in the warranty deed with reference to "that part of the Northeast quarter of the Southwest quarter lying South of the Moreau Creek" was occasioned by Moreau Creek gradually shifting its course during the 1930's from the semi-circular line of trees heretofore mentioned to the north, thereby placing the controversial 11.67 acre tract south of the present course of Moreau Creek. The controversial 2.89 acre tract was occasioned by the slight northerly angle which the west-east fence ran which was understood by plaintiffs Arnett as forming the south boundary line. Plaintiffs Arnett did not discover any discrepancy in acreage between the concluding phrase of the legal description in the warranty deed, to-wit, "containing in all 129 acres more or less", and the boundaries pointed out to them prior to consummation of the sale, until they had the real property surveyed sometime after the warranty deed in question was recorded and they had taken possession. Defendants Cox and their predecessors in title had been in actual, open, notorious, hostile, exclusive, and continuous possession of the 11.67 acre tract for more than ten (10) years immediately preceding the date plaintiffs Arnett filed suit and title thereto had vested in defendants Cox by adverse possession. Defendants Schultz and their predecessors in title had been in actual, open, notorious, hostile, exclusive, and continuous possession of the 2.89 acre tract for more than ten (10) years immediately preceding the date plaintiffs Arnett filed suit and title thereto had vested in defendants Schultz by adverse possession.

The triangular 0.34 acre tract heretofore mentioned lying east of and adjacent to Route E and south of and adjacent to the south line of the real property per the legal description in the warranty deed was never mentioned or described in any of the pleadings or the judgment rendered by the trial court. However, the record discloses that

evidence was adduced with respect thereto without objection which would have supported a finding by the trier of facts that plaintiffs Arnett, and their predecessors in title, had been in actual, open, notorious, hostile, exclusive, and continuous possession of the triangular 0.34 acre tract for more than ten (10) years immediately prior to the date plaintiffs Arnett filed suit. The evidence immediately heretofore referred to was uncontradicted.

After traveling an admittedly long, winding procedural-factual road, the points raised by plaintiffs Arnett on appeal, two in number, are finally reached: (1) the trial court erred in failing to order, adjudge and decree that title to the triangular 0.34 acre tract was vested in plaintiffs Arnett in fee simple absolute by adverse possession; and (2) the trial court erred in ordering, adjudging and decreeing that plaintiffs Arnett "abandon" the cause of action asserted in Count I of their petition, as the phrase "containing in all 129 acres more or less" in the legal description recited in the warranty deed constituted a covenant of quantity, i.e. acreage, and afforded a basis for an action for damages for its breach. It should be particularly noted that plaintiffs Arnett neither question nor attack the judgment of the trial court regarding vestment of title to the 11.67 acre and 2.89 acre tracts, respectively, in defendants Cox and defendants Schultz.

▮ The first point relied upon by plaintiffs Arnett is well taken. Rule 55.-33(b) provides, in part, that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." *Obermeyer v. Hentschel,* 389 S.W.2d 203, 205–06 (Mo.1965), recognizes the applicability of Rule 55.33(b) (formerly Rule 55.44) to quiet title actions. Broadly speaking, failure to timely and specifically object to evidence beyond the scope of the pleadings constitutes implied consent for determination of issues thereby raised. *East v. Landmark Central Bank & Trust Company,* 585 S.W.2d 222, 226 (Mo.App.1979).

Issues so tried by implied consent are treated as if raised by the pleadings even though the latter are not formally amended to conform to the evidence. Rule 55.33(b); and *Shelton v. Julian,* 610 S.W.2d 129, 131 (Mo.App.1980). The issue of title to the triangular 0.34 acre tract by adverse possession having been joined by the evidence, it was incumbent upon the trial court to adjudicate same and render judgment determining the respective interests of the parties therein. *Hillman v. Hedgpeth,* 600 S.W.2d 625, 628 (Mo.App.1980). See also, *Clevenger v. Mueller,* 547 S.W.2d 173, 178 (Mo.App.1977). In view of the uncontradicted status of the evidence that title to the triangular 0.34 acre tract had ripened in plaintiffs Arnett by adverse possession, the trial court should have rendered judgment in their favor accordingly.

▮ In response to the first point relied upon by plaintiffs Arnett, respondents argue that the same should be rejected under the hoary maxim *"de minimis non curat lex"*—"[t]he law does not concern itself about trifles", Black's Law Dictionary 388 (5th ed. 1979). 5 Am.Jur.2d Appeal and Error § 790 is cited in support of this argument. Although the section relied upon recognizes the general rule to be that minor discrepancies in dollar amounts of judgments at variance with the evidence will not afford a basis for reversal on appeal, an exception is recognized regarding rights in real property. Although numerous Missouri cases have applied the general rule in connection with minimal dollar amounts, neither of the parties has cited, nor has this court's independent research disclosed, any Missouri cases recognizing and applying the exception heretofore noted. Other jurisdictions, for example, *Kelton v. Saylor,* 211 Ky. 739, 277 S.W. 1026, 1027 (1925), and *Harvey v. Mason City & Ft. D.R. Company,* 129 Iowa 465, 105 N.W. 958, 964 (1906), recognize and apply the exception regarding rights in real property. The logic for doing so—rights involving real property are deemed substantial and material and should not be categorized as trivial—is sound and warrants adoption by this court.

■ The second and final point relied upon by plaintiffs Arnett pivots in part on whether the concluding language of the legal description set forth in the warranty deed, "containing in all 129 acres more or less", was merely descriptive or a covenant of quantity or acreage. The mention of quantity of acres in a warranty deed following a definite and certain legal description set forth therein, e.g. described by metes and bounds, or by quarter or quarter-quarter sections, or by "other known specifications", is merely descriptive rather than a covenant as to quantity or acreage, and, though the acreage falls short of the mentioned amount, affords no basis for an action for breach of any of the usual covenants in a warranty deed. *Cantrell v. McDonald*, 412 S.W.2d 403, 408 (Mo.1967). The rule or principle just mentioned is particularly applicable where, as here, a sale in gross by the tract, and not a sale by the acre, is involved. Id. 408.

Plaintiffs Arnett seek to avoid the impact of *Cantrell v. McDonald*, supra, by relying upon *Pecare v. Chouteau's Administrator*, 13 Mo. 527 (1850), regarding establishment of the north boundary of the land conveyed by defendants Henry to plaintiffs Arnett. *Pecare* is factually distinguishable from the instant case. In *Pecare*, the grantor conveyed a tract of 57 arpents (an arpent is a French measure of land equal to approximately one acre) bounded on the north, west and south by land owned by others, and on the east by land retained by the grantor. It was impossible to ascertain the east boundary of the land conveyed absent reference to and reliance upon the number of arpents mentioned in the legal description set forth in the deed of conveyance. The court in *Pecare* therefore held that the recital of arpents in the legal description set forth in the deed of conveyance was a covenant as to quantity and afforded the basis for a cause of action by the grantee against the grantor for a shortage in quantity as the grantor did not retain sufficient land to constitute an east boundary for the land conveyed. Id. at 529. In the instant case, the north boundary of the land conveyed was susceptible of being ascertained absent reference to and reliance upon the recital "containing in all 129 acres more or less" by, as hereinafter more fully explicated, the location of Moreau Creek.

■ The second and final point relied upon by plaintiffs Arnett pivots full circle once the understanding of the parties, grantors-defendants Henry and grantees-plaintiffs Arnett, is ascertained as to whether the earlier location of the course of Moreau Creek as evidenced by the existing semi-circular line of trees constituted the north boundary of the land conveyed, or whether Moreau Creek as presently located constituted the north boundary of the land conveyed. Conjunctively, similar considerations come into play regarding the south boundary of the tract of land in question. By way of reiteration for purposes of emphasis, the evidence stands uncontradicted that prior to consummation of the sale and at the time the warranty deed in question was executed and delivered, both plaintiffs Arnett and defendants Henry understood that the north boundary of the land conveyed was the earlier location of Moreau Creek as evidenced by the existing semi-circular line of trees and the south boundary of the land conveyed was the fence running from west to east at a slight angle to the north. Bare reference in the legal description set forth in the warranty deed to "all that part of the northeast quarter of the Southwest quarter lying south of Moreau Creek" without refinement as to the earlier location of Moreau Creek as evidenced by the existing semi-circular line of trees did not comport with the understanding of the respective parties as to the north boundary of the land being conveyed. Concomitantly, basic reference in the legal description set forth in the warranty deed to a true directional line without refinement as to the fence running from west to east at a slight angle to the north did not comport with the understanding of the respective parties as to the south boundary of the land being conveyed. It is implicit that the trial court deemed the legal description set forth in the warranty

deed as susceptible of being construed as wholly inconsistent with the location of the north and south boundaries of the land conveyed as understood by the respective parties. This conclusion is buttressed by the following finding of fact by the trial court: "The inclusion of additional land in the description on the aforesaid deed was a mutual mistake of grantors and grantees." A further conclusion is inescapable—the judgment rendered by the trial court reflects that it was posited, insofar as disposing of the issues joined by the counterclaim asserted by defendants Henry, upon reformation of the warranty deed, to-wit, the legal description contained therein, on grounds of mutual mistake. It is well established that parol evidence may be considered for purposes of reformation of a warranty deed on grounds of mutual mistake on the part of grantors and grantees, *State v. Schwabe*, 335 S.W.2d 15, 19 (Mo. 1960); and *Walters v. Tucker*, 308 S.W.2d 673, 675 (Mo.1957). Mutual mistake as to the proper legal description of land to be conveyed constitutes grounds for reformation of a deed. *Niemeyer v. Stephens*, 515 S.W.2d 65, 66 (Mo.App.1974).

■ Clear and convincing evidence that a mutual mistake occurred is required to justify reformation. *King v. Riley*, 498 S.W.2d 564, 565 (Mo.1973). The evidence in the instant case met the requisite standard as the record discloses, without dispute or contradiction, that plaintiffs Arnett intended to purchase and defendants Henry intended to sell and convey only such land as pointed out on the occasion of the site inspections. Parenthetically, plaintiffs Arnett have never claimed or contended that there was any fraudulent conduct associated with the transaction on the part of defendants Henry. Nor would the record support such a claim or contention, if made.

Ultimate disposition of the second and final point of plaintiffs Arnett is governed by *Dent v. Hobson*, 189 Mo.App. 140, 175 S.W. 289, 290 (1915), wherein the court held that reformation of a deed left nothing on which to base a cause of action for breach of warranty because of a deficiency of land. See also, *Wolz v. Venard*, 253 Mo. 67, 161 S.W. 760, 764–65 (1913).

The judgment of the trial court is affirmed; the cause, however, is remanded with directions to the trial court (1) to entertain further proceedings, if necessary, to determine the legal description of the triangular 0.34 acre tract, (2) to amend the judgment declaring title to the 0.34 acre tract to be in plaintiffs Arnett in fee simple absolute, and (3) to entertain a motion to dismiss Count I of the petition of plaintiffs Arnett in order to clear the record as, technically, Count I of the petition of plaintiffs Arnett is still pending notwithstanding the fact that in accordance with the opinion of the court herein no cause of action lies in favor of plaintiffs Arnett under Count I of their petition.

Judgment affirmed; cause remanded with directions consistent with the opinion herein.